1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. CARPENTER, | NO. C 00-3706  MMC |
| Petitioner, | |
| v. | ORDER |
| MICHAEL MARTEL., Acting Warden of California State Prison at San Quentin, | **DEATH PENALTY CASE** |
| Respondent. | |

19

**Introduction**

20

The instant case arises from petitioner's conviction and death sentence for murdering five

21

people in Marin County and raping or attempting to rape three of them.  His crimes occurred

22

between October 11, 1980, and November 28, 1980.  Due to pre-trial publicity, the case was tried in

23

San Diego County.  On November 29, 1999, the California Supreme Court affirmed petitioner's

24

conviction and death sentence.  *See People v. Carpenter*, 21 Cal. 4th 1016 (1999).[1]  On October 2,

25

2000, the United States Supreme Court denied a petition for certiorari.  *See Carpenter v. California*,

26

27

28

---

[1] Petitioner was separately convicted and sentenced to death for, among other things, murdering two people and attempting to murder a third in Santa Cruz County between March and May 1981.  Due to pre-trial publicity, the Santa Cruz County charges were tried in Los Angeles County.  Petitioner's conviction and death sentence based on the Santa Cruz/Los Angeles County case is the subject of a separate federal habeas petition before this Court.  *See Carpenter v. Woodford*, C 98-2444 MMC, ("*Carpenter I*").

531 U.S. 838 (2000). Prior to affirmance of his conviction and sentence on direct review, petitioner filed two separate state habeas petitions. The first was filed in the state trial court on September 28, 1988, and was based on allegations of juror misconduct. The trial court granted the petition and ordered a new trial, after which the California Supreme Court reversed the new trial order and denied the petition. *See In re Carpenter*, 9 Cal.4th 634 (1995). The second was filed in the California Supreme Court on November 1, 1999, and was denied on January 13, 2000. *See In re Carpenter*, No. S083246.

Thereafter, on November 4, 2002, petitioner filed a federal Petition for Writ of Habeas Corpus in this district. On November 26, 2002, the Court granted petitioner's motion to hold the proceedings in abeyance while he filed a second state habeas petition in the California Supreme Court. On December 18, 2002, the California Supreme Court denied the second state petition, and on December 27, 2002, petitioner filed his First Amended Petition for Writ of Habeas Corpus ("First Amended Petition") in this court.

Respondent subsequently filed a Motion to Dismiss First Amended Petition, in which respondent primarily asserted various procedural grounds for dismissal of at least certain portions of petitioner's First Amended Petition. The Court addressed all of the procedural issues in a series of orders.

In 2008, based on allegations in the First Amended Petition and the applicable law, the Court issued an order requiring petitioner's competency be determined in a timely manner, pursuant to *Rohan ex, rel. Gates v. Woodford*, 334 F. 3d 803, 817 (9th Cir. 2003) (holding petitioners have "statutory right to competence in [their] habeas proceedings"). Based on the case record and the examination report of stipulated expert Dr. Robert Roesch, the Court found petitioner competent to pursue his habeas claims.[2]

---

[2] Petitioner appealed certain of the Court's orders regarding the competency determination to the Ninth Circuit Court of Appeals; the appeal was dismissed and denied in an unpublished memorandum on July 31, 2009. *See Carpenter v. Ayers*, Nos. 08-99019 & 08-99020, 2009 WL 2387288. (9th Cir. 2009).

United States District Court

For the Northern District of California

The parties subsequently met and conferred, and agreed to a briefing schedule[3] to address the remainder of petitioner's claims.  Pursuant to that agreement, the claims were divided into nine separate groups.  This Order addresses Group I Claims: 36, 41, 42, 43, 44, 45, 52, 53, 55 and 56. For the following reasons, each of said claims will be denied.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C § 2254(d).[4]  A federal court must presume the correctness of the state court's factual findings, and the presumption of correctness may only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of section 2254(d) have separate and distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is "contrary to" clearly established United States Supreme Court law if it fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id*. at 413-414.  A decision is an "unreasonable application" of United States Supreme Court law if  "the state court identifies the correct governing legal principle . . .  but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 414.  A federal court must bear in mind, however, that "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so

---

[3] The briefing schedule subsequently was amended by the Court.

[4] The parties agree AEDPA applies to this matter.

United States District Court

For the Northern District of California

long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

In that regard, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly[;] [r]ather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts" than previously had been accorded them. *Clark v. Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).

Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. *See Williams*, 529 U.S. at 412. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *See Clark*, 331 F.3d at 1070. A state court's decision need not cite to and a state court need not be aware of federal law to pass muster under AEDPA; rather, "so long as the neither the reasoning nor the result of the state-court decision contradicts [federal law]", the decision may be upheld. *Early v. Packer*, 537 U.S. 3, 8 (2002).

"Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

Moreover, even if a petitioner meets the requirements of section 2254(d), habeas relief is warranted only if the petitioner can establish "actual prejudice," i.e., that the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (internal quotation and citation omitted).

//

//

//

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

**DISCUSSION**

**I.      Claim 36: Instruction on Life Without Possibility of Parole**

In Claim 36, petitioner contends the trial court's refusal to give a particular jury instruction regarding the meaning of life without the possibility of parole violated his Eighth Amendment rights.[5]  This issue was addressed as follows by the California Supreme Court in a reasoned opinion on direct appeal:

> *Refusal to Give Special Instruction on the Meaning of Life Without Possibility of Parole*
>
> Defendant contends the court erred in refusing to instruct the jury that the punishment for life without possibility of parole means "the defendant will be confined in prison until he dies, without the possibility of parole or release."  The court did not err.  (*People v. Arias* (1996) 13 Cal. 4th 92, 172-173 [parallel citations omitted].)  The requested instruction in this case was worded slightly differently than the one in *Arias*, but, contrary to defendant's contention, it was identical in substance and contained the same inaccuracy.
>
> Defendant attempts to distinguish *Arias* by suggesting that here, unlike that case, the prosecutor "suggested" to the jury in argument that defendant might pose a threat to the community at large. . . . Defendant does not appear to, and cannot, directly challenge the prosecutor's argument on this basis, for he failed to object at trial.  (*Carpenter II, supra,* 15 Cal. 4th at p. 413.)  Moreover, the prosecutor did not argue, or even "suggest[]," that defendant might be released into the community or otherwise pose a danger to the community outside prison.  Defendant pulls from context widely scattered snippets of the prosecutor's lengthy summation and asserts that, in combination, they contain this suggestion.  They do not. [footnote omitted].
>
> Defendant also argues the failure to give the instruction violated his right to present, and have the jury consider, mitigating evidence.  It did not.  Defendant was permitted to present, and did present, a wide array of evidence he considered mitigating.  No one suggested to the jury that defendant might be released if given life without parole or that the jury should not consider any of the defense evidence.

*Carpenter*, 21 Cal. 4th at 1063-1064.

To obtain federal collateral relief for instructional error, a petitioner must show the challenged instruction, or the lack of instruction, by itself so infected the entire trial that the resulting conviction violates due process.  *See Estelle v. McGuire*, 502 U.S. 67, 72 (1991); *Cupp v. Naughten*,

---

[5] The instruction requested by petitioner reads as follows: "You are instructed to regard the punishment of imprisonment for life without the possibility of parole as meaning exactly what it says: the defendant will be confined in prison until he dies, without the possibility of parole or release. [¶] You are instructed to regard the death penalty as meaning exactly what it says: that the defendant will be put to death in an execution chamber."

414 U.S. 141, 147 (1973); see also *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *See Estelle*, 502 U.S. 62, 72 (1991).  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir.), *cert denied*, 488 U.S. 861 (1988); *see, e. g., Middleton v McNeil*, 541 U.S. 433, 434-435 (2004) (per curiam) (finding no reasonable likelihood jury misled by single incorrect instruction on imperfect self-defense where three other instructions correctly stated law); *Mayfield v. Woodford*, 270 F. 3d 915, 922-924 (9th Cir. 2001) (holding no error shown where guilt phase instructions precluded consideration of mitigating factors, and trial court, at penalty phase, allowed jury to consider "such guilt phase instructions as it found applicable"; finding instructions viewed as a whole required jurors at penalty phase to consider all relevant mitigating evidence).

Here, as set forth below, petitioner cannot demonstrate the trial court's decision not to give petitioner's requested instruction deprived him of a fair trial, nor can he show the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law or that it relied on an unreasonable determination of the facts.

Petitioner alleges the trial court's refusal to give petitioner's requested instruction about the meaning of life without parole violated his due process rights.  A state trial court's refusal to give an instruction, however, does not by itself raise a ground cognizable in federal habeas corpus proceedings.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  Rather, the error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment.  *See id.*  Here, in support of his argument that he was deprived of a fair trial, petitioner relies primarily on *Simmons v. South Carolina*, 512 U.S. 154, 169 (1994).  As discussed below, petitioner's reliance on *Simmons* is misplaced.

In *Simmons*, the trial court barred all reference to the defendant's ineligibility for parole, informing the jury only that the defendant would be sentenced either to "life imprisonment" or death. *See Simmons*, 512 U.S. at 156-157. Here, by contrast, the jury was informed by the instructions at the penalty phase that the choices were "life without possibility of parole" and death. Indeed, during closing argument, petitioner's defense counsel pointed out that petitioner would either die in prison or in an execution chamber. *(See* 187 RT 20950-20951); *see also, e.g., Shafer v. South Carolina*, 532 U.S. 36, 39 (2001) (holding jury may properly be informed of defendant's parole ineligibility "either by a jury instruction <u>or</u> in arguments by counsel") (emphasis added). Thus, even without petitioner's requested instruction, the jury was aware petitioner would not be eligible for parole if he was not sentenced to death. *See Bonin v. Calderon*, 59 F.3d 815, 849 (9th Cir. 1995) (denying, as "speculative," claim that jurors would not understand meaning of "life without possibility of parole"; holding petitioner not entitled to special instruction defining phrase). *Simmons* is distinguishable for the further reason that the prosecutor in that case urged the jury to sentence the defendant to death because of his alleged future dangerousness. *Simmons*, 512 U.S. at 157-158. Here, however, as the California Supreme Court reasonably found, the prosecutor did not argue or, or even suggest, that defendant might be released into the community or otherwise pose a danger to the community outside prison." *Carpenter*, 21 Cal. 4th at 1063 (internal quotation and alteration omitted).

Petitioner's argument that the lack of instruction prevented the jury from considering the mitigating evidence he presented likewise is without merit. As the California Supreme Court reasonably concluded, petitioner "was permitted to present, and did present, a wide array of evidence he considered mitigating; [n]o one suggested to the jury that [petitioner] might be released if given life without parole or that the jury should not consider any of the defense evidence." *Carpenter*, 21 Cal. 4th at 1063-1064.

Finally, petitioner cannot demonstrate he suffered any prejudice as a result of any instructional error alleged in this claim. As noted, even if a petitioner meets the requirements of section 2254(d), habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht,* 507 U.S. at 638. In this case, the jury was well aware of the option to impose a sentence of life without the possibility of

1  parole, and decided, after hearing the aggravating and mitigating evidence, to impose a sentence of

2  death.   Petitioner has not demonstrated that his requested instruction would have convinced the jury

3  to return a different verdict.

4       Accordingly, petitioner fails to show he is entitled to habeas relief on this claim.

5  **II.**    **Claim 41: Constitutionality of Provisions Narrowing Class of Defendants Eligible for Death Penalty**

6       Petitioner was death eligible because the jury found true two special circumstances: multiple

7  murder and rape murder.  In Claim 41, petitioner contends California's death penalty law is

8  unconstitutional because it fails to narrow rationally the class of murderers eligible for the death

9  sentence; additionally, petitioner makes a specific challenge to California's lying-in-wait special

10  circumstance.[6]  This issue was addressed as follows in a reasoned opinion by the California Supreme

11  Court on direct appeal:

12         Defendant renews a number of arguments we have already rejected.  California's

13         death penalty law does not fail to narrow adequately the class of offenders eligible for the death penalty.  Moreover, defendant, a serial killer, would be death eligible under

14         almost any reasonable narrowing scheme. (*Carpenter II, supra*, 15 Cal. 4th at ¶.  419-420.)

15  *Carpenter*, 21 Cal. 4th at 1064. [7]

16

17  _____

18      [6] The lying-in-wait special circumstance is not applicable here.  Even if such special circumstance had been found, however, petitioner's claim based thereon would fail.  *See Edwards v.*

19  *Ayers*, 542 F. 3d 759, 767 (9th Cir. 2008) (holding "California's lying in wait special circumstance instruction as interpreted by the California Supreme Court does sufficiently narrow the class of first degree murders to satisfy the Eighth Amendment.")

20

21      [7] The cited opinion reads as follows:

22      *Constitutionality of California's Death Penalty Law and Other Contentions*

23      Defendant argues the California death penalty law in general, and the lying-in-wait and rape-murder special circumstances in particular, do not meaningfully distinguish

24  between first degree murders that are death eligible and those that are not.  We have rejected the contentions.  (*People v. Crittenden, supra*, 9 Cal. 4th at ¶. 154-156;

25  *People v. Morales*, *supra*, 48 Cal. 3d at p. 557; *People v. Harris*, *supra*, 47 Cal. 3d at p. 1100.)  Moreover, the lying-in-wait and rape-murder special circumstances were

26  not all that made defendant death eligible.  The jury also found true the special circumstance of multiple murder, which dramatically distinguishes this case from

27  other murder cases.  Defendant challenges our holding in *People v. Anderson* (1987) 43 Cal. 3d 1104 [parallel citation omitted] that intent to kill is not an element of a

28  felony-based special circumstance.  The argument not only lacks merit for the reasons stated in *Anderson*; it is irrelevant to this case.  As the trial was held before *Anderson*

United States District Court

For the Northern District of California

Petitioner claims the California death penalty scheme fails to adequately narrow the class of first-degree murderers eligible for the death penalty. Petitioner, however, has not shown the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law, nor has petitioner shown the opinion relied on an unreasonable determination of the facts. In particular, the United States Supreme Court has held California's death penalty scheme does appropriately narrow the class of death-eligible defendants and does not apply to every defendant convicted of murder. *See Tuilaepa v. California,* 512 U.S. 967, 972 (1994) (holding to pass constitutional muster, state's death penalty scheme "may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder"). As noted, petitioner was death-eligible because the jury found true the multiple-murder and the rape-murder special circumstances. *Carpenter*, 21 Cal. 4th at 1029. He cannot demonstrate that either of those special circumstances was not sufficiently narrowing.[8]

Accordingly, petitioner fails to show he is entitled to habeas relief on this claim.

## III.   Claim 42: Constitutionality of Executing the Emotionally "Retarded"

In Claim 42, petitioner claims his execution would violate the Constitution because he is a "person whose emotional development is significantly retarded." In particular, petitioner contends his execution would violate his rights under the Eighth Amendment and international law because his emotional development was significantly retarded and is at a level comparable to that of a child, not an adult. Petitioner maintains that California's death penalty law violates contemporary standards of decency by applying the death penalty, based assumedly on adult standards of responsibility, to the conduct of a person whose emotional development and resulting ability to

---

> but after our decision in *Carlos v. Superior Court* (1983) 35 Cal. 3d 131 [paralllel citation omitted], the court instructed the jury that intent to kill *was* an element of the rape-murder special circumstance.

*Carpenter*, 15 Cal. 4th at 420.

[8] Petitioner cites to *Ashmus v. Martel*, C 93-594 TEH, in which, petitioner asserts, a similar claim was raised and was the subject of an evidentiary hearing. As discussed above, the Court finds petitioner's claim suitable for denial on the record before the Court. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding review under section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits").

1  control his conduct fails to reach an adult level as dictated by social norms.  The California Supreme

2  Court denied this claim in a summary opinion on habeas review.

3       The United States Supreme Court prohibits the execution of mentally retarded individuals

4  because their "disabilities in areas of reasoning, judgment, and control of their impulses [render

5  them unable to] act with the level of moral culpability that characterizes the most serious adult

6  criminal conduct" and because "their impairment can jeopardize the reliability and fairness of capital

7  proceedings against mentally retarded defendants."  *Atkins v. Virginia*, 536 U.S. 304, 306-307

8  (2002).  Additionally, the Eighth Amendment prohibits the execution of those under the age of

9  eighteen at the time of the commission of a crime.  *Roper v. Simmons*, 543 U.S. 551 (2005).

10      Petitioner seeks to expand the Supreme Court's prohibition of the execution of the mentally

11  retarded to include emotionally retarded adults, asserting that the Eighth Amendment's prohibition

12  of cruel and unusual punishment "must draw its meaning from the evolving standards of decency

13  that mark the progress of a maturing society."  *Trop v. Dulles*, 356 U.S. 86, 100-101 (1958).

14  Petitioner argues that *Atkins* and *Roper*, taken together, suggest that contemporary standards of

15  decency in the Eighth Amendment impliedly prohibit the execution of a person whose emotional

16  development is substantially impaired.  Petitioner's reliance on *Atkins* and *Roper* is unavailing.

17      The *Atkins* Court held mentally retarded individuals are categorically excluded from

18  execution; the *Atkins* Court's categorical exclusion of such persons, however, is narrow in scope.

19  *See Atkins*, 536 U.S. at 320-321.  In particular, the Supreme Court defined "mental retardation" as

20  requiring "not only subaverage intellectual functioning, but also significant limitations in adaptive

21  skills such as communication, self-care, and self-direction that became manifest before age 18."  *Id.*

22  at 318.

23      Petitioner concedes he is not mentally retarded, but, rather, asserts he is "emotionally

24  retarded" and thus developmentally impaired in a manner similar to that defined in *Atkins*. Petitioner

25  claims his emotional development "seriously impairs his reasoning, judgment and impulse control,

26  leaving him with the behavioral responses of a confused, frightened, or angry child."  (*See* Appendix

27  153, Foster Decl. ¶ 32.)  Additionally, petitioner claims his emotional and/or developmental

28  impairment is the result of serious psychiatric and neurological disabilities and not of volitional

**United States District Court**
For the Northern District of California

10

1 | irresponsibility or indifference.  (*Id.* ¶ 43.)

2 | *Atkins*, however, is specifically limited to the mentally retarded.  Petitioner can cite to no

3 | authority recognizing an expansion of *Atkins* to include emotionally and/or developmentally

4 | impaired persons.  Further, the Ninth Circuit has expressly declined to extend *Roper* to persons who

5 | are chronologically over the age of eighteen, even in situations where they share the same emotional

6 | development comparative to that of a minor under the age of 18.  *See United States v. Mitchell*, 502

7 | F.3d 931, 981-982 (9th Cir. 2007).

8 | Accordingly, petitioner cannot demonstrate the California Supreme Court's rejection of his

9 | claim was objectively unreasonable or contrary to clearly established United States Supreme Court

10 | precedent, and petitioner thus fails to show he is entitled to habeas relief on this claim.

11 | **IV.    Claim 43: Constitutionality of Executing Persons Having Reduced Impulse Control**

12 | In Claim 42, petitioner claims his execution would violate the Eighth Amendment because

13 | his judgment and impulse control are impaired in a manner comparable to the impairment found in

14 | mentally retarded persons.  The California Supreme Court denied this claim in a summary opinion

15 | on habeas review.

16 | Petitioner cannot demonstrate the state court was objectively unreasonable in so ruling.  As

17 | with Claim 42, petitioner is attempting to expand *Atkins* to apply not only to the mentally retarded

18 | but also to those with reduced judgment or impulse control, and, as with Claim 42, petitioner has

19 | cited to *no* authority supporting such argument.

20 | Accordingly, petitioner fails to show he is entitled to habeas relief on this claim.

21 | **V.    Claim 44: Constitutionality of Executing Persons of Advanced Age**

22 | In Claim 44, petitioner contends California's death penalty statute violates the Eighth

23 | Amendment because it allows for the execution of a prisoner of advanced age.  Petitioner will be

24 | over eighty years old if he is executed as scheduled; he contends the execution of a person in his

25 | eighties will not serve any legitimate penological interest.  *See Gregg v. Georgia*, 428 U.S. 153, 183

26 | (1976) (holding "the sanction imposed cannot be so totally without penological justification that it

27 | results in the gratuitous infliction of suffering").  In addition, petitioner argues, California's death

28 | penalty law violates the standards of international law.  The California Supreme Court denied this

**United States District Court**
For the Northern District of California

1    claim in a summary opinion on habeas review.

2         Petitioner cannot demonstrate the state court's decision rejecting this claim was objectively

3    unreasonable.  The Ninth Circuit, as both petitioner and respondent point out, has refused to grant a

4    certificate of appealability on this issue.  *See Allen v. Ornoski*, 435 F.3d 946, 948, 952 (9th Cir.

5    2006) (noting "(1) the Supreme Court's limitations on the use of the death penalty are grounded in

6    the theory that some classes of persons are less culpable and therefore not deserving of the death

7    penalty"; rejecting argument that Eighth Amendment prevents execution of the elderly; holding

8    "[petitioner's] age and infirmity do not render him less culpable at the time of his offenses[] and (2)

9    [petitioner] cannot demonstrate the required "objective indicia of consensus" that evolving standards

10   of decency now prohibit the execution of elderly and infirm persons").

11        Notwithstanding such precedent, petitioner requests his judgment be modified to provide a

12   sentence of life imprisonment, on the ground that executing a person of advanced age will not serve

13   any legitimate penological interest, in particular, deterrence or retribution.  In so arguing, petitioner

14   overlooks the applicable standard for review for federal habeas petitions. This Court need not

15   determine whether executing a person older than eighty years serves a legitimate penological

16   purpose.  Rather, it must decide whether, at the time the judgment was rendered, the judgment was

17   contrary to, or involved an unreasonable application of, clearly established United States Supreme

18   Court precedent.  As discussed, the state court's decision denying this claim was neither contrary to

19   nor involved an unreasonable application of Supreme Court precedent.  *See Allen,* 435 F.3d at 954-

20   955.  Indeed, by denying a certificate of appealability, the Ninth Circuit has decided it is not

21   possible for reasonable jurists even "to debate" whether executing a person of advanced age was

22   contrary to, or involved an unreasonable application of, Supreme Court precedent.  *Id.* at 952.

23        Moreover, petitioner's claim fails because it would require the creation of a new

24   constitutional rule.  Section 2254(d), as amended by AEDPA, provides that no habeas relief may be

25   granted as to any claim that was adjudicated on the merits in state court unless the prior decision was

26   contrary to, or involved an unreasonable application of, clearly established federal law as determined

27   by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1) (codifying and amending the

28   non-retroactivity principle announced in *Teague v. Lane*, 489 U.S. 288 (1989)).  The Supreme Court

United States District Court

For the Northern District of California

1   has never held that allowing execution of the elderly violates the Constitution.  Consequently,

2   petitioner's claim would require the announcement of a new constitutional rule. With few

3   exceptions, none of which are applicable here, *Teague* bars such a result.  *See Butler v. McKellar*,

4   494 U.S. 407, 412 (1990).

5        Accordingly, petitioner fails to show he is entitled to habeas relief on this claim.

6   **VI.    Claim 45: Constitutionality of Jury Instructions and California Death Penalty Law**

7        In Claim 45, petitioner contends California's death penalty law and instructional error at his

8   penalty phase trial resulted in violations of his Fifth, Eighth and Fourteenth Amendment rights.  This

9   claim comprises a number of subclaims, each of which the California Supreme Court denied, either

10  in its reasoned opinion on direct appeal or in its summary denials of petitioner's first and second

11  state habeas petitions.  The Court considers each subclaim in turn and, for the reasons set forth

12  below, finds petitioner is not entitled to relief.

13       **A.    Claim 45A: Instruction on Burden and Standard of Proof**

14       In Claim 45A, petitioner maintains the trial court failed to instruct the jury on certain penalty

15  phase issues concerning the burden of proof.  According to petitioner, the prosecutor was required to

16  prove, beyond a reasonable doubt, the appropriateness of death as a penalty, and contends the failure

17  of the trial court to so instruct the jury violated his rights under the Sixth, Eighth and Fourteenth

18  Amendments.

19       Petitioner cannot demonstrate the California Supreme Court's denial of this claim was

20  contrary to, or an unreasonable application of, clearly established federal law.   Petitioner can cite to

21  no law, clearly established at the time his direct appeal became final, entitling him to the relief he

22  seeks.[9]  Indeed, the Ninth Circuit has held there is no requirement that the state prove death is the

23  appropriate penalty beyond a reasonable doubt.  *See Williams v. Calderon*, 52 F. 3d 1465, 1484-

24  1485 (9th Cir. 1995); *Harris v. Pulley*, 692 F. 2d 1189, 1194 (9th Cir. 1982), vacated and remanded

25  on separate grounds, *Pulley v. Harris*, 465 U.S. 37 (1989).  Consequently, no such instruction was

26  ───────────────

27       [9] Petitioner cites to *Ring v. Arizona*, 536 U.S. 584 (2002) as support for his argument.  As
    petitioner concedes, however, he may not rely on *Ring* because the Supreme Court has held *Ring*
28  does not apply retroactively to cases, such as petitioner's, that were final on direct appeal at the time
    *Ring* was decided.  *See Schriro v. Summerlin*, 542 U.S. 348 (2004).

1    required.

2    **B.    Claim 45B: Unanimity Regarding Aggravating Factors**

3    In Claim 45B, petitioner maintains the trial court was required to instruct the jury that it was

4    required to unanimously find particular aggravating factors; he contends the trial court's failure to

5    do so violated petitioner's constitutional rights.  Petitioner cannot show the state court's rejection of

6    this claim was contrary to, or an unreasonable application of, clearly established federal law or an

7    unreasonable determination of the facts.

8    In support of his claim, petitioner cites to *Ring*.  Even if petitioner were correct that *Ring*

9    requires such an instruction, however, his claim nonetheless would fail, because, as petitioner

10   concedes, *Ring* is not applicable to cases that were final on direct appeal at the time *Ring* was

11   decided.  *See Schriro*, 542 U.S. at 358

12   **C.    Claim 45C: Inapplicable Sentencing Factors**

13   In Claim 45C, petitioner contends the trial court committed constitutional error in not

14   deleting inapplicable sentencing factors from its instructions.  Petitioner fails to demonstrate the

15   state court's decision denying this claim was unreasonable.

16   Although the trial court gave an instruction regarding sentencing factors without deleting the

17   factors inapplicable to petitioner's case, the trial court also instructed the jury to consider only those

18   sentencing factors it found to be applicable in petitioner's case.  188 RT 20969, 20973.  The Ninth

19   Circuit has found such an approach constitutional, noting "the cautionary words 'if applicable'

20   warned the jury that not all of the factors would be relevant and that the absence of a factor made it

21   inapplicable rather than an aggravating factor."  *See Bonin v. Calderon*, 59 F. 3d 815, 848 (9th Cir.

22   1995); *see also Williams v. Calderon*, 52 F.3d 1465, 1481 (9th Cir. 1995).  Given such authority,

23   petitioner cannot demonstrate the state court's rejection of this claim was unreasonable.   Moreover,

24   petitioner has not shown he suffered any prejudice as a result of any such claimed instructional error.

25   *See Brecht*, 507 U.S. at 638.

26   **D.    Claim 45D: Designation Of Aggravating And Mitigating Factors**

27   In Claim 45D, petitioner claims the trial court was required to instruct the jury that certain

28   sentencing factors could only be mitigating factors, and that it was error for the trial court to fail to

**United States District Court**
For the Northern District of California

14

designate such factors.  Petitioner cannot demonstrate the California Supreme Court's denial of this claim was an unreasonable application of clearly established federal law.

In *Tuilaepa*, the United States Supreme Court held an instruction as was given in petitioner's case, providing a single listing of sentencing factors without designating which factors are mitigating and which are aggravating, does not violate the Constitution. *See Tuilaepa*,  512 U.S. at 978-979; *see also, Williams v. Calderon*, 52 F. 3d at 1484 (holding California's "death penalty statute's failure to label aggravating and mitigating factors is constitutional").  In light of such authority, petitioner's claim fails.

**E.    Claim 45E: Factor (k) Instructions**

In Claim 45E, petitioner contends the instruction given to the jury regarding factor (k) of California Penal Code Section 190.3 was not a sufficient instruction on mitigating factors.  Petitioner cannot show the state court's denial of this claim was unreasonable.

The factor (k) instruction given to the jury at the penalty phase of petitioner's trial informed the jury that it could consider:

> Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime and any sympathetic or other aspect of the defendant's character or record that the defendant offers as a basis for a sentence less than death, whether or not related to the offense for which he is on trial.  You must disregard any jury instructions given to you in the guilt or innocence phase of this trial which conflicts with this principle.

(188 RT 20970.)

A shorter version of the same instruction has been upheld by the United States Supreme Court.  *See Boyde v. California*, 494 U.S. 370, 373-74, 376 (1990) (finding no reasonable likelihood instruction on "catch-all" factor (k) would have prevented jurors from considering defendant's character and background in mitigation).  Given the applicable Supreme Court precedent, petitioner cannot demonstrate the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.

**F.    Claim 45F: Emotional Disturbance Instructions**

In Claim 45F, petitioner claims the trial court's instruction on emotional disturbance and mitigation misled the jurors and violated his Eighth Amendment rights.  Pursuant to factor (d) of

United States District Court

For the Northern District of California

1   Penal Code Section 190.3, a jury may consider as a possible mitigating factor "whether or not the

2   offense was committed under the influence of extreme mental or emotional disturbance."  According

3   to petitioner, the jurors may have interpreted this instruction to mean that a defendant's emotional

4   disturbance could only be considered mitigating if it was contemporaneous with the capital crimes.

5        Petitioner cannot demonstrate the California Supreme Court's rejection of this claim was

6   objectively unreasonable.  In order to obtain federal collateral relief for instructional error, a

7   petitioner must show that the challenged instruction, or lack of instruction, "by itself so infected the

8   entire trial that the resulting conviction violates due process."  *See Estelle*, 502 U.S. at 72; *Cupp v.*

9   *Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)

10  ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even

11  "universally condemned," but that it violated some [constitutional right].'").  The instruction "may

12  not be judged in artificial isolation, but must be considered in the context of the instructions as a

13  whole and the trial record."  *See Estelle*, 502 U.S. at 72 (internal quotation and citation omitted).

14       The United States Supreme Court has held that the jury in a capital case "may not be

15  precluded from considering, and may not refuse to consider, any relevant mitigating evidence

16  offered by the defendant as the basis for a sentence less that death."  *Penry v. Lynaugh*, 492 U.S.

17  302, 318 (1989).  Here, however, in addition to being informed of factor (d) regarding

18  contemporaneous emotional disturbance, the jury was instructed "to consider the instructions as a

19  whole" and, further, was instructed to consider "[a]ny other circumstance which extenuated the

20  gravity of the crime even though it is not a legal excuse for the crime, and any other aspect of the

21  defendant's character or record that the defendant offers as a basis for a sentence less than death."

22  188 RT 20964-20970.  The instructions "as a whole," *see Estelle*, 502 U.S. at 72, informed the jurors

23  they were to consider mitigating evidence of mental or emotional disturbance, even if it was not

24  contemporaneous with the crime.  Lastly, petitioner has not demonstrated the state court's decision

25  was contrary to any clearly established federal law.

26       **G.    Claim 45G: Factor (a) Instruction**

27       In Claim 45G, petitioner maintains that factor (a) of California Penal Code section 190.3

28  violates the Eighth Amendment.  This provision allows the penalty phase jury to consider the

16

United States District Court

For the Northern District of California

1   "circumstances of the crime of which the defendant was convicted," along with "any special

2   circumstances found to be true."  *See* Cal. Penal Code § 190.3.  According to petitioner, factor (a)

3   biases the jury in favor of death instead of life without parole.

4        Petitioner cannot demonstrate the California Supreme Court's rejection of this claim was

5   unreasonable.  The United States Supreme Court has rejected a similar challenge to factor (a), noting

6   such assertion "is at some odds with settled principles, for our capital jurisprudence has established

7   that the sentencer should consider the circumstances of the crime in deciding whether to impose the

8   death penalty."  *Tuilaepa*, 512 U.S. at 976.  Given such precedent, along with petitioner's failure to

9   cite to any clearly established law in support of his argument, this claim fails.

10        **H.      Claim 45H: Presumption of Life Instruction**

11        In Claim 45H, petitioner claims the trial court was required to instruct the jury that life

12   without parole was the presumed sentence, and that failure to do so violated his constitutional rights.

13   Petitioner cites to no case in support of such assertion, and, consequently, fails to show the state

14   court's rejection of his claim was contrary to clearly established federal law or in any other manner

15   was unreasonable.

16        **I.      Claim 45I: Pretrial Notice of Aggravating Evidence**

17        In Claim 45I, petitioner claims the prosecution's pretrial notices of aggravating evidence

18   lacked particularity and failed to adequately identify the specific evidence to be offered under factor

19   (a), the factor pertaining to the circumstances of the charged offense(s).  According to petitioner,

20   such lack of specificity violated his constitutional rights to due process, effective assistance of

21   counsel and a reliable penalty determination.

22        The pre-trial notice as to factor (a) stated the evidence "will include but is not limited to . . .

23   all acts committed by the defendant in furtherance of the crimes."  19 CT 4264, 4132.  Petitioner's

24   trial counsel moved to strike the notice, arguing that the "not limited to" language rendered the

25   notice vague.  The trial court denied the motion to strike the notice, but struck the language stating

26   the evidence was not be limited to "the evidence specified in the notice."  28 CT 6254.

27        Under California law, a penalty phase jury is required to consider evidence presented at the

28   guilt phase, *see* Cal. Penal Code § 190.4 (d), and no additional notice of the prosecutor's intention to

United States District Court

For the Northern District of California

1  present this evidence is necessary under any other relevant state statute or case.  Petitioner cites to

2  no federal statutory or case law contrary thereto or that otherwise would entitle him to the relief he

3  seeks.  Petitioner thus fails to demonstrate the California Supreme Court's denial of this claim was

4  an unreasonable application of clearly established federal law.  Moreover, petitioner does not claim

5  the prosecution actually presented any factor (a) evidence beyond the circumstances of the offenses,

6  and thus fails to show he was in any manner prejudiced by the form of the notice.

7  **J.      Claim 45J: Contrary Facts**

8       In Claim 45J, petitioner claims it is a violation of the Eighth Amendment for California not

9  to guarantee that squarely contrary facts will not be given aggravating weight in different cases.  In

10  dismissing the same claim in petitioner's other capital case, the California Supreme Court made the

11  following observations.

12       [Petitioner] complains the death penalty law does not "guarantee that squarely
         contrary facts will not be given aggravating weight in different cases" because, he
13       argues, different prosecutors may make contradictory arguments as to what is an
         aggravating circumstance.  However, what may be aggravating (or mitigating)
14       depends on the overall facts of any given case.  We see nothing improper in allowing
         the jury to consider the facts of the case at hand without regard to what might be
15       argued or considered in some other case.

16  *Carpenter*, 15 Cal. 4th at 420.

17       Petitioner has not shown the state court's rejection of this claim in the instant case was

18  unreasonable.  The Supreme Court has upheld California's death penalty statute under the Eighth

19  Amendment, *see Boyde*, 494 U.S. at 372-386, and petitioner has not cited to any controlling or

20  persuasive authority holding the lack of such guarantee violates the federal Constitution.  Petitioner

21  thus cannot demonstrate the state court's opinion is unreasonable.  Moreover, petitioner has not

22  shown he suffered any prejudice as a result of any such alleged error.  *See Brecht,* 507 U.S. at 638.

23  **K.      Claim 45K: Unanimity and Mitigating Factors**

24       In Claim 45K, petitioner claims his Eighth Amendment rights were violated by the absence

25  of an instruction expressly informing the jurors that unanimity was not required in order for

26  individual jurors to consider mitigating factors.  The Supreme Court has held it is unconstitutional

27  for jurors to be "precluded from considering any mitigating evidence unless all 12 jurors agree[] on

28  the existence of a particular such circumstance."  *Mills v. Maryland*, 486 U.S. 367, 384 (1988)

United States District Court

For the Northern District of California

1   (internal quotation and citation omitted).

2          Although the jurors at petitioner's penalty phase trial were not instructed that unanimity was

3   not required for consideration of mitigating factors, they were instructed that unanimity was required

4   in order to impose a death sentence.  Under such circumstances, there is no constitutional violation.

5   *Smith v. Spisak*, 130 S.Ct. 676, 684 (2010) (finding no violation of *Mills* where challenged

6   instructions "did not say that the jury must determine the existence of each individual mitigating

7   factor unanimously").  Consequently, petitioner has not shown the California Supreme Court's

8   rejection of this claim was contrary to, or an unreasonable application of, clearly established federal

9   law.

10          **L.      Claim 45L: Written Findings of Aggravating Factors**

11          In Claim 45L, petitioner maintains his Eighth Amendment and due process rights were

12   violated by the trial court's failure to require written findings identifying the aggravating factors on

13   which the jury relied.

14          The Ninth Circuit has considered and rejected such claims.  In *Williams v. Calderon*, for

15   example, the Ninth Circuit held the treatment of aggravating and mitigating factors by California's

16   death penalty statute "ensures meaningful appellate review" and "need not require written jury

17   findings in order to be constitutional."  *See Williams,* 52 F. 3d 1465, 1484-1485 (9th Cir. 1995).

18   There is no Supreme Court authority to the contrary.  Under such circumstances, petitioner fails to

19   show the state court's rejection of this claim was contrary to clearly established federal law, nor has

20   petitioner shown the California Supreme Court's rejection of this claim was otherwise unreasonable.

21          **M.      Claim 45M: Separate Penalty Verdicts**

22          In Claim 45M, petitioner maintains that requiring the jury to render a separate penalty verdict

23   on each count, rather than a single penalty verdict, violated his constitutional rights under the Eighth

24   and Fourteenth Amendments.  The California Supreme Court rejected this claim in a reasoned

25   opinion on direct appeal, finding the trial court "did not err" by requiring the jury to return a separate

26   penalty verdict for each murder.  *Carpenter*, 15 Cal. 4th at 421 (citing *People v. Sandoval*, 4 Cal. 4th

27   155, 197 (1992)).

28          Petitioner does not, and cannot, cite to any federal precedent holding the challenged

19

1   requirement unconstitutional, and, consequently, petitioner has not shown the state court's reasoned

2   opinion rejecting this claim is contrary to, or an unreasonable application of, clearly established

3   United States Supreme Court law.  Further, petitioner has not shown the state court's opinion relied

4   on an unreasonable determination of the facts.

<div style="text-align:left; font-weight:bold;">
5            **N.**      **Claim 45N: Standards to Guide Prosecutorial Discretion**
</div>

6          In Claim 45N, petitioner claims there is a lack of sufficient standards to guide prosecutorial

7   discretion as to whether to seek the death penalty in a particular case, and, consequently, there is a

8   risk of arbitrariness, in violation of the Eighth and Fourteenth Amendments.

9          Petitioner cites to no case in support of this argument.  Rather, petitioner, in his reply brief,

10   directs the Court's attention to two articles.  In the absence of controlling or persuasive case

11   authority suggesting prosecutorial discretion of this type violates the Constitution, however,

12   petitioner cannot show the state court's opinion as to this issue was unreasonable.

13   **O.**      **Claim 45O: Proportionality Review**

14          In Claim 45O, petitioner asserts his constitutional rights were violated by the lack of inter-

15   case proportionality review of the imposition of a death sentence in his case.

16          The Ninth Circuit repeatedly has held "there is no federal constitutional requirement of inter-

17   case proportionality analysis of death sentences."  *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1309

18   (9th Cir. 1996) (citing *Pulley v. Harris*, 465 U.S. 37, 43, 50-51 (1984)); *Allen v. Woodford*, 395 F. 3d

19   979, 1018-1019 (9th Cir. 2005) (holding neither due process, nor the Eighth Amendment, nor equal

20   protection mandate proportionality review).  In light of such authority, petitioner has not shown the

21   state court's rejection of this claim was unreasonable.

22   **P.**      **Prejudice**

23          As discussed in detail above, petitioner, by his Claims 45A-45O, has failed to demonstrate

24   any constitutional error.  Even if petitioner had demonstrated constitutional error, however, he has

25   not shown that any of the alleged errors, whether singly or cumulatively, had a substantial and

26   injurious effect or influence in determining the jury's verdict.  *See Brecht*, 507 U.S. at 638.[10]

27

28          [10] Because the above findings are on the merits of Claims 45A - 45O, the Court does not
address herein respondent's argument that many of petitioner's claims of instructional error are
*Teague*-barred.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VII.    Claim 52:  Fairness of California Supreme Court's Adjudication of Death Penalty Cases**

In Claim 52, petitioner claims the California Supreme Court is unable to fairly review capital cases, in part because, according to petitioner, the California judiciary is not independent.[11]  This claim was rejected on the merits in a summary opinion by the California Supreme Court on habeas review.  As discussed below, petitioner is unable to demonstrate the state court's decision is objectively unreasonable.  *See Delgado*, 223 F.3d at 982.

First, as respondent correctly points out, to the extent petitioner is challenging the manner in which the state court conducted a habeas review of his claim, such challenge fails for the reason that petitioner cannot demonstrate there is any federal constitutional right to state habeas proceedings.  Consequently, a claim "alleging errors in the state post-conviction review process is not addressable through [federal] habeas corpus proceedings."  *Franzen v. Brinkman*, 877 F. 2d 26. 26 (9th Cir. 1989).  Second, the Ninth Circuit has confirmed that the California death penalty statute "ensures meaningful appellate review," *Williams*, 52 F. 3d at 1484, and there is nothing in the California Supreme Court's lengthy and detailed opinion on direct review indicating that it did not meaningfully consider petitioner's claims.  *See Carpenter*, Cal. 4th at 1016-1066.

Petitioner nonetheless asserts he was denied meaningful appellate review because of political pressures on the California Supreme Court concerning decisions in death penalty cases.  Such assertion is wholly lacking in support.  Moreover, there is a "general presumption that judges are unbiased and honest."  *Ortiz v. Stewart*, 149 F.3d 923, 938 (1998) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).  Nothing in petitioner's argument regarding political pressure suffices to overcome said general presumption.  Petitioner identifies nothing in the record of his own case that might suggest, let alone demonstrate, any bias, and petitioner cannot deny that although in many instances capital sentences have been upheld, the California Supreme Court also has issued decisions in which capital sentences have been reversed.  Further, while petitioner notes that three justices of the California Supreme Court were removed from the Supreme Court in a 1986 retention election in which those justices' death penalty decisions were criticized, petitioner cannot demonstrate the

---

[11] This claim is essentially identical to Claim 62 in *Carpenter I*, C-98-2444.

1   justices who considered his case were in any manner influenced by a fear of some future challenge

2   and removal from the bench.

3        In sum, this Court having conducted an independent review of the record, finds petitioner

4   fails to demonstrate the state court's denial of his claim was objectively unreasonable, and,

5   accordingly, petitioner is not entitled to habeas relief based thereon.

6   **VIII:   Claim 53: Execution Following Lengthy Confinement**

7        In Claim 53, petitioner maintains that his execution after a lengthy period of confinement

8   would constitute cruel and unusual punishment in violation of the Eighth Amendment.  This claim

9   was denied by the California Supreme Court in a summary decision on habeas review.[12]

10       Petitioner's claim is barred by *Teague* and, in any event, is without merit.  The Ninth Circuit

11  has concluded that, given the absence of any clearly established Supreme Court authority holding an

12  execution following a long confinement violates the Eighth Amendment, such a claim is *Teague*-

13  barred.  *Smith v. Mahoney*, 611 F.3d 978, 998-999 (9th Cir. 2010) (citing *Allen v. Ornoski*, 435 F. 3d

14  946 (9th Cir. 2006) (holding "[t]he Supreme Court has never held that execution after a long tenure

15  on death row is cruel and unusual punishment")).  Moreover, because there is no authority

16  supporting petitioner's claim, it also fails on the merits.[13]

17       Accordingly, petitioner has not shown he is entitled to habeas relief on this claim.

18  **XI.      Claim 55: International Law**

19       In Claim 55, petitioner contends his conviction and death sentence violate international law,

20  in particular, customary international law, the Universal Declaration of Human Rights, the

21  International Covenant on Civil and Political Rights, and the American Declaration on the Rights

22  and Duties of Man.[14]  This claim was denied by the California Supreme Court in a summary opinion

23  on habeas review, and petitioner cannot show such decision was in any manner unreasonable.

24       First, petitioner cannot demonstrate a claim asserting a violation of international law is

25  _____

26       [12] The claim is essentially identical to Claim 59 in *Carpenter I*, C-98-2444.

27       [13] Petitioner relies on a dissent in *Mahoney* to argue his claim is not *Teague*-barred.  A
     dissenting opinion, however, does not suffice to overcome an unequivocal holding.

28       [14] This claim is essentially identical to Claim 63 in *Carpenter I*, C-98-2444.

**United States District Court**
For the Northern District of California

1  cognizable on federal habeas review, given such review is intended to address claims that a

2  petitioner is in custody in violation of the Constitution or laws or treaties of the United States. *See*

3  28 U.S.C. § 2254(a). Needless to say, international law is not United States law, and petitioner

4  admits that neither the Universal Declaration of Human Rights nor the American Declaration on the

5  Rights and Duties of Man are treaties that create forms of relief enforceable in United States courts.

6      In addition, because there is no clearly established federal law holding the California death

7  penalty violates international law, or that an alleged violation of international law creates a

8  cognizable claim on federal habeas review, petitioner's claim is barred by *Teague*.

9      In sum, the claim is not cognizable and is meritless. Accordingly, petitioner is not entitled to

10  habeas relief based thereon.

11  **X.**    **Claim 56: Administration of the Death Penalty**

12      In Claim 56, petitioner alleges it is impossible to administer the death penalty in a manner

13  consistent with due process and without violating the Eighth Amendment. This claim was rejected

14  by the California Supreme Court in a summary opinion on habeas review, and petitioner is unable to

15  demonstrate the state court's decision is unreasonable. *See Delgado v. Lewis*, 223 F.3d at 982.

16      Petitioner cites to no controlling precedent supporting his argument that the death penalty is

17  incapable of being administered in a manner consistent with the Eighth Amendment. Indeed, the

18  United States Supreme Court has held the death penalty is constitutional, even "in our imperfect

19  system." *See Kansas v. Marsh*, 548 U.S. 163, 181 (2006); *see also United States v. Mitchell*, 502

20  F.3d 931, 938 (9th Cir. 2007) (noting there is "no authority suggesting that the risk of executing an

21  innocent defendant renders capital punishment inherently unconstitutional"); *see also Mitchell*, 502

22  F.3d at 982 (rejecting, as "unavailing," contention that capital punishment is incompatible with

23  society's values or otherwise categorically violates the Eighth Amendment).

24      Accordingly, petitioner has not shown he is entitled to habeas relief on this claim.

25  //

26  //

27  //

28  //

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, Claims 36, 41,42, 43, 44, 45, 52, 53, 55 and 56 in petitioner's First Amended Petition are hereby DENIED.

Pursuant to the Court's prior order, the parties are instructed to begin briefing on Group II claims in both *Carpenter I* and *Carpenter II*. Petitioner's motion or opening brief on Group II claims in C-98-2444 (*Carpenter I*) is due no later than 90 days from the date of this order. Respondent's responsive brief is due within 60 days after petitioner's motion or brief is filed, and petitioner's reply is due within 30 days after respondent's responsive brief.

Petitioner's motion or opening brief on Group II claims in C-00-3706 (*Carpenter II*) is due within 14 days of his motion or opening brief in C-00-3706. Respondent's responsive brief is due within 60 days after petitioner's motion or brief is filed; any reply by petitioner is due within 30 days after respondent's responsive brief.

**IT IS SO ORDERED.**

DATED: November 9, 2011

_____
MAXINE M. CHESNEY
United States District Judge