1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID J. CARPENTER,

    Petitioner,

v.

KEVIN CHAPPELL, Acting Warden of
California State Prison at San Quentin,

    Respondent.

NO. C 00-3706  MMC

ORDER DENYING GROUP II
CLAIMS 28, 37, 38 and 40

**<u>DEATH PENALTY CASE</u>**

**Introduction**

        The instant case arises from petitioner's conviction and death sentence for murdering five

people in Marin County and raping or attempting to rape three of those victims.  His crimes occurred

between October 11, 1980, and November 28, 1980.  Due to pre-trial publicity, the case was tried in

San Diego County.  On November 29, 1999, the California Supreme Court affirmed petitioner's

conviction and death sentence.  *See People v. Carpenter*, 21 Cal. 4th 1016 (1999).[1]  On October 2,

--------

        [1]  Petitioner was separately convicted and sentenced to death for, among other things,
murdering two people and attempting to murder a third in Santa Cruz County between March and
May of 1981.  The Santa Cruz County charges, also due to pre-trial publicity, were tried in Los
Angeles County.  Petitioner's conviction and death sentence based on the Santa Cruz-Los Angeles
County case is the subject of a separate federal habeas petition before this Court, *Carpenter v.
Woodford*, C 98-2444 MMC, ("*Carpenter I*").

United States District Court

For the Northern District of California

2000, the United States Supreme Court denied a petition for a writ of certiorari. *See Carpenter v. California*, 531 U.S. 838 (2000). Also, prior to the affirmance of his conviction and sentence on direct review, petitioner filed two separate state habeas petitions. The first was filed in the trial court on September 28, 1988, and was based on allegations of juror misconduct. The trial court granted the petition and ordered a new trial, but the California Supreme Court reversed the trial court's order and denied the petition. *See In re Carpenter*, 9 Cal.4th 634 (1995). The second was filed in the California Supreme Court on November 1, 1999, and was denied on January 13, 2000. *See In re Carpenter*, No. S083246.

Thereafter, on November 4, 2002, petitioner filed in this district a federal petition for a writ of habeas corpus. On November 26, 2002, the Court granted petitioner's motion to hold the proceedings in abeyance while he filed a second state habeas petition in the California Supreme Court. On December 18, 2002, the California Supreme Court denied the second state petition, and on December 27, 2002, petitioner filed his First Amended Petition for Writ of Habeas Corpus ("First Amended Petition").

Respondent subsequently filed a motion to dismiss the First Amended Petition, primarily asserting procedural grounds that respondent argued warranted dismissal of at least certain portions of petitioner's First Amended Petition. The Court thereafter addressed all said procedural issues in a series of orders.

In 2008, based on allegations contained in the First Amended Petition and the applicable law, the Court issued an order requiring petitioner's competency be determined in a timely manner. *See Rohan ex, rel. Gates v. Woodford*, 334 F. 3d 803, 817 (9th Cir. 2003) (holding petitioners have "statutory right to competence in [their] habeas proceedings"), and, after reviewing the case record and the report of stipulated expert Dr. Robert Roesch, found petitioner competent to pursue his habeas claims.[2]

The parties subsequently met and conferred, and agreed to a briefing schedule to address the

---

[2] Petitioner appealed certain of the Court's orders regarding the competency determination, which appeal was dismissed and denied in an unpublished memorandum on July 31, 2009. *See Carpenter v. Ayers*, Nos. 08-99019 & 08-99020, 2009 WL 2387288. (9th Cir. 2009).

1   remainder of petitioner's claims, which schedule also separated the claims into nine separate groups.

2   The briefing schedule subsequently was amended by the Court.  This order addresses Claims 28, 37,

3   38, and 40 in Group II.  For the following reasons, all of said claims will be denied.

**Legal Standard**

5       Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

6   court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the

7   merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that

8   was contrary to, or involved an unreasonable application of, clearly established Federal law, as

9   determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

10  on an unreasonable determination of the facts in light of the evidence presented in the State court

11  proceeding."  28 U.S.C § 2254(d).[3]  A federal court must presume the correctness of the state court's

12  factual findings, and the presumption of correctness may only be rebutted by clear and convincing

13  evidence.  28 U.S.C. § 2254(e)(1).

14      The "contrary to" and "unreasonable application" clauses of section 2254(d) have separate

15  and distinct meanings.  *See Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court's decision is

16  "contrary to" clearly established United States Supreme Court law if it fails to apply the correct

17  controlling authority or if it applies the controlling authority to a case involving facts materially

18  indistinguishable from those in a controlling case, but nonetheless reaches a different result.  *Id.* at

19  413-414.  A decision is an "unreasonable application" of United States Supreme Court law if "the

20  state court identifies the correct governing legal principle . . .  but unreasonably applies that principle

21  to the facts of the prisoner's case."  *Id.* at 414.  A federal court must bear in mind, however, that "'an

22  *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"

23  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing *Williams*, 529 U.S. at 410) (emphasis in

24  original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so

25  long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at

26  786 (citing *Yarborough v. Alvarado*, 541 U.S. 653, 664 (2004)).

27

28      [3] The parties agree AEDPA applies to this matter.

3

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    In that regard, "a federal habeas court may not issue the writ simply because the court

2    concludes in its independent judgment that the relevant state-court decision applied clearly

3    established federal law erroneously or incorrectly[;] [r]ather, that application must be objectively

4    unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  "While the 'objectively

5    unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of

6    deference to the state courts" than previously had been accorded them.  *Clark v. Murphy*, 331 F.3d

7    1062, 1068 (9th Cir. 2003).

8    Holdings of the Supreme Court at the time of the state court decision are the only definitive

9    source of clearly established federal law under AEDPA.  *See Williams*, 529 U.S. at 412.  Although

10   circuit law may be "persuasive authority" for purposes of determining whether a state court decision

11   is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are

12   binding on the state courts and only those holdings need be reasonably applied.  *See Clark*, 331 F.3d

13   at 1070.  A state court's decision need not cite to and a state court need not be aware of federal law

14   to pass muster under AEDPA; rather, "so long as neither the reasoning nor the result of the state-

15   court decision contradicts [federal law]", the decision may be upheld.  *Early v. Packer*, 537 U.S. 3, 8

16   (2002).

17   When a federal court is presented with a state court decision that is unaccompanied by a

18   rationale for its conclusions, the court has no basis other than the record "for knowing whether the

19   state court correctly identified the governing legal principle or was extending the principle into a

20   new context."  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  In such situations, federal courts

21   must conduct an independent review of the record to determine whether the state court decision is

22   objectively unreasonable.  *Id.*  Specifically, "where a state court's decision is unaccompanied by an

23   explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

24   basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

25   Moreover, even if a petitioner meets the requirements of section 2254(d), habeas relief is

26   warranted only if the constitutional error at issue had a substantial and injurious effect or influence

27   in determining the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Under this

28   standard, petitioners "may obtain plenary review of their constitutional claims, but they are not

4

United States District Court

For the Northern District of California

1    entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

2    prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 439 (1986)).

3                                                    **Analysis**

4    **I.      Claim 28: Motion for Separate Penalty Phase Jury**

5           In Claim 28, petitioner contends his rights under the Fifth, Sixth, Eighth and Fourteenth

6    Amendments were violated when the trial court denied his request for a separate penalty phase jury.

7    The California Supreme Court denied this claim in a reasoned opinion on direct appeal, explaining:

8
9           Defendant asked the court to impanel a new jury for the penalty
            determination.  The court denied the motion.  Defendant contends the court erred.
            We disagree.

10
11          Reflecting the Legislature's long preference for a single jury to determine
     both guilt and penalty (*People v. Bradford, supra,* 15 Cal. 4th at p. 1353), Penal Code
     section 190.4, subdivision(c)  requires the guilt jury to decide the penalty unless the
12   court discharges that jury "for good cause shown."  Defendant argues good cause
     existed here.  The trial court expressed the view that is was "almost automatic" that
13   the jury, which had found defendant guilty of the charged crimes, would find he also
     killed Heather Scaggs once the prosecution proved the same person committed that
14   crime.  Defendant argues this observation shows that the jury would be unable to
     perform its duty properly.  It did not.  The comment reflected the state of the
15   evidence, not jury bias.[4] The jury's guilt verdict was based on the evidence.  If the
     jury also found defendant killed Scaggs, which was, indeed, almost certain given the
16   evidence, that finding would also be based on evidence, not bias.  The trial court does
     not "abuse its discretion in declining to impanel a new jury based upon the assertion
17   that the jury at the penalty phase might be prejudiced by having heard the evidence of
     the capital crimes." (*People v. Bradford, supra,* 15 Cal. 4th at p. 1354.)  Defendant
18   had the opportunity to try to raise a reasonable doubt that he killed Scaggs.  That he
     was unlikely to succeed before this jury, or any other that heard the evidence,
19   provided no cause to impanel a new jury and effectively retry the entire case.  The
     court acted within its discretion in following the preferred procedure. (*Id.* at p. 1353).
20
     *Carpenter*, 21 Cal. 4th at 1059.
21
22          Petitioner cannot point to any clearly established federal law demonstrating the state court's

23   denial of this claim was objectively unreasonable, nor has he shown the state court's denial of the

24   claim relied on an unreasonable determination of the facts.  Significantly, petitioner can point to no

25          [4] [Opinion Footnote 7] The evidence of Scagg's murder, first presented at the penalty phase,
     provided yet additional compelling evidence of defendant's guilt.  It would be utterly unreasonable
26   to suppose that some hypothetical real killer (who looked like defendant, wore a distinctive jacket
     like defendant's, wore shoes of the same size and pattern as a pair defendant purchased the day
27   before one of the murders, and drove a red Fiat like defendant's) had obtained the murder weapon
     from defendant's friend, then used it in Santa Cruz to kill defendant's coworker who, when last seen
28   alive, was scheduled to drive to Santa Cruz with defendant.

1   clearly established federal law holding, or even suggesting, that a trial court's refusal to order a

2   separate penalty phase jury in a capital case is prejudicial.

3          Citing *Williams v. Cavazos*, 646 F. 3d 626, 636-41 (9th Cir. 2011), *cert. granted* 181 L. Ed.

4   2d 806 (2012), petitioner argues that, because the state court addressed his claim under state law,

5   this Court is free to address his federal constitutional claims *de novo*.  Petitioner's reliance on

6   *Williams*, which currently is under review by the Supreme Court, is misplaced.  Petitioner's federal

7   constitutional claims of error are based largely on what he alleges is his "state-created liberty

8   interest" under California Penal Code § 190.4(c), which allows, but does not require, a new penalty

9   phase jury be empaneled upon a showing of good cause.  As the Supreme Court has made clear,

10  however, not every state law error is, *ipso facto*, a federal due process violation.  *See Rivera v.*

11  *Illinois*, 556 U.S. 148, 159 (2009).  Rather, errors of state law implicate the federal constitution only

12  if the error "so infused the trial with unfairness as to deny due process of law."  *Estelle v. McGuire*,

13  502 U.S. 62, 75 (1991).  More importantly, as the California Supreme Court's reasoned opinion

14  confirmed, there was no violation of state law in the trial court's refusal to seat a separate penalty

15  phase jury.  A state court's interpretation of state law, including one announced on direct appeal of

16  the challenged conviction, binds a federal court sitting in habeas corpus.  *Bradshaw v. Richey*, 546

17  U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988).  Consequently, petitioner cannot

18  argue persuasively that his federal due process rights were implicated.

19         Further, petitioner has not shown he suffered any prejudice by reason of the trial court's

20  alleged error.  *See Brecht*, 507 U.S. at 637.  In particular, there is no evidence even suggesting that

21  had a separate penalty phase jury been empaneled, the result of petitioner's trial would have been

22  different.  *See id.*

23         Accordingly, this claim will be denied.

24  **II.     Claim 37: Excusal of Jurors Based on Views Regarding Death Penalty**

25         In Claim 37, petitioner contends it was constitutional error for the trial court to dismiss three

26  potential jurors who were challenged for cause by the prosecution on the basis of their views about

27  the death penalty.  This claim was denied by the California Supreme Court on direct appeal for the

28  following reasons:

**United States District Court**
For the Northern District of California

6

United States District Court

For the Northern District of California

1

Defendant contends the court erroneously excused for cause three jurors because of their views on the death penalty. "A prospective juror may be excused for cause if that juror's views on the death penalty would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' [Citations.] . . . On review, if the juror's statements are equivocal or conflicting, the trial court's determination of the juror's state of mind is binding. If there is no inconsistency, we will uphold the court's ruling if it is supported by substantial evidence. [Citations.] . . . " (*Carpenter II, supra*, 15 Cal. 4th at p. 357.) A juror's bias need not "be proven with unmistakable clarity. [Citations.] Rather, it is sufficient that the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law in the case before the juror." (*People v. Rodriguez* (1994) 8 Cal. 4th 1060), 1146-1147 [parallel citations omitted].) Under this standard, we uphold the court's rulings in this case.

The first juror [Robert Gustafson] was an attorney who wrote on a questionnaire that he once toured San Quentin and saw the gas chamber, which he found "revolting." He wrote, "this would affect my decision-making in the second half of a bifurcated first degree murder trial." At voir dire the parties and court questioned him at length on his views. The court then excused him in a lengthy oral ruling. Among other things, the court noted that the prospective juror said that he believed a life sentence is "tougher" than the death penalty, which "is absolutely contrary to the California scheme of punishment"; that the court was not sure whether "he actually believes that or not . . . because I believe that his attitude in response to the questions . . . was extremely combative"; and that often, "rather than answer the questions directly, there was a reflection and an attempt for him to state what his views are." The court "really got the impression that the man was using this forum as some sort of a soap box for his own personal views about the death penalty." Accordingly, the court found the prospective juror "substantially impaired . . . in making the choice of penalties." The record supports the court's ruling. The prospective juror gave lengthy, often nonresponsive, and sometimes inconsistent answers. Under the circumstances, an appellate court must defer to the findings of the trial judge, who was actually present and could observe the juror.

The second juror [Candace Ogden] was equivocal in her answers. Several times she said she did not "know" whether she could vote for the death penalty. Other times she stated she could follow the law and indicated she could return either verdict. The third juror [Thomas Adametz] expressed the view that life without parole was the harsher of the two penalties. He also said he was "predisposed" towards life in prison, although he could vote for the death penalty. At times, the juror said he did not "know" if his views would impair his ability to consider the case; other times he indicated he could return either verdict. After questioning the juror twice, the court dismissed him. It noted that "in viewing the demeanor of the juror, I found him to be acting under significant stress. . . . And it seems to me that he really has some deep-seated views with respect to capital penalty and certainly the two penalties involved." It found the juror "would be substantially impaired in performing his duties." Again, under these circumstances, we must defer to the trial court's rulings.

Defendant argues that the trial court erred in considering the jurors' views that life without parole is the harsher punishment. These views, however, are part of the entire picture the court may consider. (*People v. Millwee* (1998) 18 Cal. 4th 96, 147 [parallel citations omitted].)

*Carpenter*, 21 Cal. 4th at 1035-36.

7

The Supreme Court has held that a potential juror may be dismissed for cause if the juror's views on the death penalty "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985). "[I]n applying this standard, reviewing courts are to accord deference to the trial court." *Utrecht v. Brown,* 551 U.S. 1, 7 (2007). The bias of potential jurors need not be "unmistakably clear," as "they may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings." *Id.* (citations omitted). "Thus, when there is ambiguity in the prospective juror's statements, the trial court, aided as it undoubtedly [is] by its assessment of [the venireman's] demeanor, [is] entitled to resolve it in favor of the State." *Id.* (internal quotation and citation omitted) (alterations in original).

In this instance, the gravamen of petitioner's argument that the jurors were wrongly excused is that the trial judge's factual findings, adopted by the California Supreme Court and entitled to deference here, are "clearly erroneous." Petitioner bears a substantial burden in showing such clear error; under AEDPA, the federal court is required to presume the correctness of the state court's factual findings, and the presumption of correctness may only be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Petitioner has not made the requisite showing. Petitioner argues that, even if all three jurors were opposed to the death penalty, each consistently asserted that he/she could consider the evidence, follow the law, and return a penalty of death if the aggravating evidence outweighed the mitigating evidence, and that the trial court's findings in support of dismissal for cause were "clearly erroneous" given the jurors' answers. A review of the transcript of the subject proceedings, however, confirms that the trial court's findings were not clearly erroneous, and, consequently, said findings are entitled to deference by this Court under AEDPA.

First, as to prospective juror Gustafson, the record demonstrates his answers were equivocal and ambiguous, and that he often did not directly respond to "yes or no" questions. 63 RT 3673-3690. He also stated he would consider "nonrecord facts," including his trip to the San Quentin death chamber, in determining the appropriate punishment. 63 RT 3676. In support of his determination to excuse Gustafson for cause, the trial judge made a number of findings (63 RT

United States District Court
For the Northern District of California

3687-89) that are supported by Gustafson's answers, both on the jury questionnaire and during *voir dire*. Under such circumstances, petitioner fails to show the trial court's findings of fact were clearly erroneous.

Next, as to prospective juror Ogden, the record demonstrates her opinion vacillated and her answers changed during questioning. For example, when questioned by the trial judge, Ogden was unable to state whether or not she would be able to return a verdict of death. 67 RT 4394. When questioned by defense counsel, however, she stated that despite her reservations, she could do so, 67 RT 4403-04, and when questioned by the prosecutor, she first stated she could not vote for death, and later stated she could but would "hate" to be "forced" to make such a decision, 67 RT 4406-15. In finding, under *Witt,* Ogden would be "substantially impaired" as a juror in a capital case, the trial judge pointed to her changing answers and to her demeanor in court, including her obvious "distress" concerning the issue. 67 RT 4421-23. The trial judge also noted that she had been questioned for 45 minutes and nonetheless continued to give equivocal answers. *Id.* Given the record, and the detailed and reasonable analysis of the trial court, petitioner has not demonstrated the challenged factual findings were clearly erroneous.

Lastly, as to prospective juror Adametz, the record again demonstrates considerable equivocation. Although he stated he would be willing to consider the death penalty, he also stated he was "predisposed with the idea of life imprisonment," and that he did not know whether he would vote for life without parole even in cases where the aggravating evidence far outweighed the mitigating factors. 65 RT 4124-35. Based on his responses over the course of lengthy questioning, as well as his demeanor, the trial judge concluded Adametz likewise would be substantially impaired as a juror, 65 RT 4133, 4140-41, and petitioner again fails to demonstrate such finding, or any factual finding made in support thereof, was clearly erroneous.

In sum, given the applicable law and the detailed record, petitioner fails to demonstrate that the state court's opinion relied on an unreasonable determination of the facts or was unreasonable under clearly established federal law. The responses of the three jurors to extensive questioning, as well as the trial judges's description of each such juror's demeanor, amply support the trial judge's conclusion that their respective views as to the death penalty "would prevent or substantially impair

United States District Court

For the Northern District of California

1    the performance of [their] duties as juror[s]." *See Witt*, 469 U.S. at 424.  As noted above, the bias of

2    potential jurors need not be "unmistakably clear," and "reviewing courts are to accord deference to

3    the trial court." *Utrecht,* 551 U.S. at 7.

4             Accordingly, this claim must be denied.

5    **III.     Claim 38: Excusal of Jurors May and Reed for Cause**

6             In Claim 38, petitioner contends his due process rights and his rights to an impartial jury

7    were violated when the trial court granted the prosecution's challenge for cause as to jurors Brian

8    May and Mark Reed.  The California Supreme Court denied this claim on direct appeal, and set forth

9    its reasoning as follows:

10           Defendant contends the court erroneously excused two other jurors for cause.
      "'In general, the qualification[s] of jurors challenged for cause are "matters within the
11    wide discretion of the trial court, seldom disturbed on appeal.'" (*People v. Holt*
      (1997) 15 Cal. 4th 619, 655-666 [parallel citations omitted.]

12           The first juror [May] indicated doubts that he could fairly judge the credibility
13    of a witness who admitted to using drugs.  The court and parties questioned him at
      length on two separate occasions.  At times, his answers appeared to be contradictory,
14    which was one reason the court recalled him for additional questioning.  Ultimately,
      however, the juror said because of his past experiences, he did not know if he would
15    react logically to evidence of drug usage.  The court excused him, finding "that his
      state of mind is such that if narcotics evidence is entered into the case, that that very
16    well could prevent him from acting with entire impartiality and to the prejudice of the
      substantial rights of both parties . . ."  The second juror [Reed] described two
17    negative experiences he had with the San Diego police and expressed concerns about
      how he would react to evidence of drug usage.  After close questioning, the court
18    excused the juror, finding the juror's views on the police "troublesome" and also
      finding he "would be extremely biased against any witness called who has either used
19    narcotics or, particularly, sold narcotics. . . ."

20           We cannot say either ruling was an abuse of discretion.  The question was
      close as to both jurors.  Both gave some answers indicating they could be fair jurors,
21    others indicating they might not.  The judge, who was present and could observe
      them, could judge their credentials far better than an appellate court reading a cold
22    record.  Moreover, any error was harmless.  "'[T]he general rule [is] that an erroneous
      exclusion of a juror for cause provides no basis for overturning a judgment.' . . .
23    Defendant has a right to jurors who are qualified and competent not to any particular
      juror."  *People v. Holt*, *supra*, 15 Cal. 4th at p. 656.)  The actual jurors of this case
24    were qualified and competent.

25           In arguing that any error was reversible, defendant cites *People v. Hamilton*
      (1963) 60 Cal. 2d 105, 128 [parallel citation omitted].  That case does not aid
26    defendant.  There, during the penalty phase, a *sitting* juror was erroneously excused
      in favor of an alternate after that juror had made statements indicating she favored the
27    defense side.  We found the error prejudicial.  "[I]f the record shows (as it does here)
      that, *based on the evidence*, that juror was inclined towards one side, the error in
28    removing such a juror would be prejudicial to that side."  (*Ibid.,* italics added.)

United States District Court

For the Northern District of California

Removing during trial a selected juror who favored one side based on the evidence is far different from excusing one or two of many prospective jurors before the jury was selected and any evidence was presented.  The rule of *Holt* applies here, not *Hamilton*.  (*People v. Holt*, *supra*, 15 Cal. 4th at p. 656.)

*Carpenter*, 21 Cal. 4th at 1036-37.

Petitioner has not cited to any clearly established federal law demonstrating the state court's denial of this claim was objectively unreasonable, nor has he shown the state court's denial of the claim relied on an unreasonable determination of the facts.   A trial court may exclude for cause any prospective juror who will be unable to render an impartial verdict based on the evidence.  *See Irvin v. Dowd*, 366 U.S. 717, 723-24 (1961).  Moreover, the state court's determination of juror partiality is entitled to a presumption of correctness on federal habeas review.  *See Witt*, 469 U.S. at 429; *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *see also United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. ) (holding determination of impartiality is particularly within province of trial judge). Here, both potential jurors gave answers suggesting they could not be impartial.  Under such circumstances, petitioner fails to show the state court's conclusion that there was no abuse of discretion in striking jurors May and Reed is, in any manner, unreasonable.  *See Carpenter*, 21 Cal. 4th at 1037.

Further, petitioner has not shown he suffered any prejudice by reason of any such alleged error on the part of the trial court.  *See Brecht*, 507 U.S. at 637.  Even if a trial court abuses its discretion in dismissing prospective jurors for cause, such error, without more, does not necessitate a finding of prejudice.  *See United States v. Lindsey*, 634 F. 3d 541, 554 (2011) (noting "the dismissal of two jurors did not result in a presumptively partial jury panel").  In this instance, there is no evidence that, had May and Reed been seated on the jury, the result of petitioner's trial would have been different.  *See Brecht*, 507 U.S. at 637.$^{5}$

Accordingly, this claim will be denied.

---

$^{5}$ Petitioner asserts he was prejudiced because Barbara Durham, one of the seated jurors, did not properly perform her duties, and thus that the result of the trial could have been different because not all of the seated jurors were qualified and competent.  Petitioner's allegations with regard to juror Durham are contained in Claim 1, which has not been briefed by the parties and addressed by this Court.  Should the Court later find petitioner's Claim 1 allegations as to juror Durham have merit, petitioner may move the Court to reconsider its denial of Claim 38.

**United States District Court**
For the Northern District of California

**IV.     Claim 40: Right to Jury Drawn from Representative Cross-Section of Community**

In Claim 40, petitioner asserts he was not tried by a jury consisting of a representative cross-section of the community.  Specifically, petitioner argues, the trial court's refusal to provide additional juror compensation and its granting of financial hardship excuses to prospective jurors excluded low-income persons from the jury and violated petitioner's Sixth, Eighth and Fourteenth Amendments rights to due process and to a trial by an impartial jury drawn from a fair cross-section of the community.  The California Supreme Court denied this claim on direct appeal, explaining:

> Before trial, defendant challenged the jury selection process on certain grounds and requested an evidentiary hearing. Later, he withdrew the bulk of the challenge, reserving only his "objection to the granting of hardship excuses for jurors based upon their inability to survive on a five dollar a day . . . stipend for probably six months of jury service in this capital case." He argued that hardship excuses would inevitably "deny him a representative cross-section of the community." The court stated it would grant an evidentiary hearing on the question if defendant wanted one, but defendant did not want one. Instead, defendant relied solely "on a common sense and legal objection to hardships," arguing that the $5 per day stipend would inevitably "discriminate against racial groups." Absent a supporting evidentiary showing, the court denied defendant's challenge. It also denied his request to "state for the record the race, ethnic background, age, and sex of all persons excused for financial hardship in this case," observing that what is relevant is the "entire jury pool," not the jurors selected for this trial.
>
> Defendant argues that the "failure to provide adequate compensation to the jurors resulted in at least 124 prospective jurors being excused based on financial hardship and deprived [him] of his right to due process and to a fair and impartial jury drawn from a representative cross- section of the community under the state and federal constitutions." Our response to similar arguments in Carpenter II applies here.  "In order to establish underrepresentation, and thus denial of an impartial jury drawn from a fair cross-section of the community, a defendant must make a prima facie showing: '(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in the venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.' [Citation.] [Citations.] [¶] As might be expected, many prospective jurors were excused for hardship. . . . We have already held that persons excused for hardship or persons of low income do not constitute a cognizable class, and that the court need not pay jurors more than the statutory amount. [Citations.] To the extent defendant argues to the contrary, the argument thus fails." (*Carpenter II*, supra, 15 Cal.4th at ¶. 351-52.)
>
> Defendant argues that the "effect of offering such a small amount as a jury fee was to exclude the poor, as well as African-Americans and Hispanics."  In *Carpenter II*, we were skeptical that any correlation between hardship excusals and cognizable classes such as race and sex "would lead to a prima facie showing of a 'systematic exclusion. . . .'" (*Carpenter II*, supra, 15 Cal.4th at p. 352.)  Defendant, however, has not even made that showing.  He declined the court's offer of an evidentiary hearing. The court was correct that any correlation of this nature among the jurors actually called for this case would prove nothing that is legally significant. The relevant bodies are the

venires from which juries are selected, not the specific group of jurors called in any given case. (Ibid.) Defendant has established no basis for relief.

*Carpenter*, 21 Cal.4th 1016, 1034-35 (1999).

Petitioner has not shown the state supreme court unreasonably applied clearly established United States Supreme Court law when it denied petitioner's claim, nor has petitioner shown the state court relied on an unreasonable determination of the facts.

In *Duren v. Missouri*, 439 U.S. 357, 364 (1979), the Supreme Court held that to establish a *prima facie* violation of the fair cross-section requirement, a defendant must show that "(1) the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process."  As the state court reasonably found, petitioner is unable to satisfy these requirements and make a *prima facie* case of systematic exclusion of low-income persons.

To begin with, there are no United States Supreme Court cases holding a defendant's Sixth Amendment rights are violated when potential jurors are excused from service due to financial hardship, and the cases on which petitioner relies are inapposite.  For example, in *Thiel v. Southern Pacific Railroad Co.*, 328 U.S. 217, 220-21 (1946), which concerned a civil suit for damages and not a criminal trial, both the clerk of the court and the jury commissioner testified that they intentionally and categorically excluded from the jury lists "all persons who work for a daily wage," a practice the Supreme Court stated could not "be justified by state or federal law."  *Id.* at 221-22.  The Supreme Court made clear, however, "that a federal judge would be justified in excusing a daily wage earner for whom jury service would entail an undue financial hardship."  *Id.* at 224.  Here petitioner does not allege, let alone show, that persons of a certain economic status were intentionally and completely excluded from the venire, and, consequently, his citation to *Thiel* is unavailing. Petitioner's citation to *Berghuis v. Smith*, 130 S. Ct. 1382, 1395-96 (2010) likewise is unavailing.  In *Berghuis*, the Supreme Court upheld the state court's denial of a fair-cross-section claim where the petitioner therein relied on a "laundry list of factors," including the trial court's "excusing people who merely alleged hardship," but where the petitioner did no more than show such factors "*might*

1  contribute to a group's underrepresentation." *Id.* (emphasis in original) (further noting Supreme

2  Court "has never 'clearly established' that jury-selection features of the kind on [the petitioner's] list

3  can give rise to a fair-cross-section claim"; recognizing state's "broad discretion" to prescribe

4  relevant qualifications for their jurors and to provide reasonable exemptions") (internal quotation

5  and citation omitted).

6          Moreover, petitioner cannot demonstrate he was in any manner prejudiced by such alleged

7  error. *See Brecht*, 507 U.S. at 637.  In particular, there is no evidence showing dismissals for

8  financial hardship disproportionately excluded any class of persons, nor is there any showing that

9  the results of the trial would have been different if the jury's composition had been different.

10         Accordingly, this claim will be denied.

11                                              **Conclusion**

12         For the foregoing reasons, Claims 28, 37, 38 and 40 in petitioner's First Amended Petition

13  are DENIED.

14         **IT IS SO ORDERED.**

15

16  DATED: September 7, 2012

        MAXINE M. CHESNEY
17      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

14